UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ANITA BARBER-WOODLEY,

                         Plaintiff,                    Civil Action No.: 13-14502
                                                 Honorable Avern Cohn
                   v.                           Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                         Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 14]**

Plaintiff Anita Barber-Woodley brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

I.      **RECOMMENDATION**

For the reasons set forth below, the Court finds the Administrative Law Judge's ("ALJ") credibility determination and the hypothetical question developed as a result are valid and supported by substantial evidence of record, resulting in a fully supportable disability determination. Accordingly, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Barber-Woodley's motion [10] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

II.     REPORT

A.      Procedural History

On December 15, 2010, Barber-Woodley filed an application for DIB, alleging disability as of May 25, 2008.  (Tr. 129-37).[1]  The claim was denied initially on May 18, 2011.  (Tr. 17; 78-81).  Thereafter, Barber-Woodley filed a timely request for an administrative hearing, which was held on May 16, 2012, before ALJ John Ransom.  (Tr. 28-41).  Barber-Woodley, represented by counsel, testified at the hearing, as did a vocational expert ("VE").  *Id.*  In a written decision dated August 29, 2012, the ALJ found Barber-Woodley not disabled.  (Tr. 14-27).  On August 26, 2013, the Appeals Council denied review (Tr. 1-4), making the ALJ's decision the final decision of the Commissioner for purposes of this Court's review.  Barber-Woodley filed for judicial review of the final decision on October 28, 2013.  [1].

B.      Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

---

[1] Barber-Woodley initially listed her alleged onset date as February 1, 2005, but then changed it to May 25, 2008, without explanation.  (Tr. 128-37).  However, from the record it appears that Barber-Woodley had previously been denied benefits at the hearing level on May 24, 2008, which would explain her new alleged onset date.  (Tr. 42-53).  Indeed, a previous RFC determination exists in the record, (*id.*), which the ALJ may have been bound to follow or explain his reasoning for departing therefrom, yet the ALJ's decision makes no mention of it.  *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) (Administration must adopt prior ALJ's RFC finding in new claim absent evidence demonstrating change in condition).  Nevertheless, neither party argues that the ALJ erred in this regard and therefore the Court declines to address the issue.

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

*1.     Barber-Woodley's Testimony and Subjective Reports*

Barber-Woodley, age 59 at the time of application, alleges disability based on the following conditions: depression/suicide and high blood pressure.[2]  (Tr. 157).   She has

---

[2] The ALJ determined at Step Two that Barber-Woodley's high blood pressure was not a severe

experienced great tragedy in her life, having lost two of her children.  (Tr. 32).  Barber-Woodley

alleges that her depression stems largely from these losses.  (*Id.*).  She has custody of two

grandchildren, ages 17 and 18, who reside with her.  (Tr. 37).  She claims that she cannot focus

or concentrate due to her conditions, and she always feels the need to keep moving to keep her

mind busy.  (Tr. 31-32; 180).  She testified that she has approximately two good days in a two-

week span.  (Tr. 31). She has difficulty sleeping and does not always engage in personal care.

(Tr. 180).  She requires medication to help her sleep, but testified that it is not always effective.

(Tr. 31).[3]

 Barber-Woodley reported that her day includes reading, watching television and

preparing dinner.  (Tr. 181).  She engages in some household chores including laundry and

cleaning, with the help of her husband.  (Tr. 182).  She goes outside every day, but does not go

out alone and only sometimes drives.  (Tr. 183).  She only will go out with her husband.  (Tr.

35).  She shops by mail, but does not feel she can handle money well because she cannot

concentrate to balance the checkbook.  (Tr. 183-84).  She attends church twice a week with her

husband but does not engage in other activities because she does not like to be around people.

(Tr. 32-35).  She reads the Bible, but has trouble concentrating.  (Tr. 34).  She has trouble

following instructions, does not get along well with authority figures and does not adapt well to

stress or changes in her routine.  (Tr. 185-86).

---

impairment. (Tr. 19; 21).  Barber-Woodley does not take issue with this conclusion, and did not
allege or testify to any limitations as a result of this condition.  Further, the evidence of record
demonstrates that her blood pressure was well-managed by medication, and produced no
complications.  (Tr. 211;263; 283; 298-99).  Accordingly, the Court will not discuss this
impairment further.

[3] The Court notes that during her April 27, 2011 psychological disability determination
evaluation, Barber-Woodley reportedly indicated that her "medications greatly assist her ability
to sleep." (Tr. 270).

### 2.   *Medical Evidence*

Barber-Woodley does not take direct issue with the ALJ's evaluation of the medical evidence in this case.  Further, the Court has reviewed the entire record, and will discuss the relevant portions of that record within the analysis portion of this Report and Recommendation.

### D.   The ALJ's Findings

Following the five-step sequential analysis, the ALJ concluded that Barber-Woodley was not disabled under the Act.  At Step One, the ALJ determined that she did not engage in substantial gainful activity from her alleged onset date through her date last insured, June 30, 2012.  (Tr. 19).  At Step Two he found that Barber-Woodley suffered from the severe impairment of major depressive disorder.  *Id.*  At Step Three he found that her severe impairment did not meet or medically equal a listed impairment, specifically comparing it to Listing 12.04 (Affective Disorders).  (Tr. 19-20).  In making this determination, the ALJ concluded that Barber-Woodley had mild restriction in activities of daily living, moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence and pace, with one to two episodes of decompensation.  (Tr. 20).

Next, the ALJ assessed Barber-Woodley's residual functional capacity ("RFC").  He found her capable of work at all exertional levels, but that the work required "no contact with the public, limited contact with co-workers, simple and repetitive tasks, not capable of work requiring constant, [c]lose attention to detail or at more than a regular pace, and requiring occasional supervision."  (Tr. 20).  At Step Four, the ALJ found that, based on the foregoing RFC, Barber-Woodley could not return to her past relevant work as a teacher's aide.  (Tr. 23).  However, at Step Five, informed in part by VE testimony, the ALJ concluded that there were a significant number of jobs in the national economy that Barber-Woodley could still perform, and

thus she was not disabled within the meaning of the Act. (Tr. 23-24). Specifically, the VE testified that, based on the foregoing RFC, the hypothetical claimant could perform the medium exertion jobs of dishwasher (3,800 jobs in the region), janitor (1,500 jobs), and packer (2,500 jobs), and the light exertion jobs of dishwasher (3,000 jobs), packer (5,200 jobs) and janitor (3,000 jobs). (Tr. 38-39).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court

is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499

F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

The court "may look to any evidence in the record, regardless of whether it has been cited by the

Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health*

*& Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that

either the ALJ or this Court discuss every piece of evidence in the administrative record.

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can

consider all evidence without directly addressing in his written decision every piece of evidence

submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is

supported by substantial evidence, "it must be affirmed even if the reviewing court would decide

the matter differently and even if substantial evidence also supports the opposite conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations

omitted).

**F.    Analysis**

Despite Barber-Woodley's brief's heading stating that she takes issue with the ALJ's

evaluation of her medical records and opinion evidence, as well as with his formulation of an

inaccurate hypothetical, the body of her brief fails to meaningfully address those issues.  [*See*

*generally* 10].  Her motion consists mainly of a compilation of quotations of black letter case

law, and a recitation of her own testimony, with no accompanying analysis or application of the

law to the facts of her case.  *Id.*  Further, Barber-Woodley does not actually appear to challenge

the ALJ's assessment of the medical evidence, nor does she cite any medical opinion for which

the ALJ failed to account.  [10 at 9-10].  In fact, her brief cites to no medical evidence

whatsoever.  *Id.*  Finally, although her argument heading does not suggest she takes issue with the ALJ's credibility determination, the issue of credibility is the only argument in her brief that could be considered even partially developed.  (*Id.* at 9-10).

Barber-Woodley's brief is very similar to one her counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue.  And, on March 24, 2014, Chief Judge Rosen issued a scathing commentary on Barber-Woodley's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel.  In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case.  Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted).  Despite this warning, Barber-Woodley's counsel has continued to file "one-size-fits-all" briefs, containing the very same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*.  Here, then, as in *Burger*, the Court could find that Barber-Woodley has waived her arguments.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted).  Nonetheless, for the sake of completeness, the Court will consider all of the evidence in light of the arguments raised (albeit vaguely) by Barber-Woodley.

### 1.      *Credibility*

Although not specifically couched as such, Barber-Woodley's motion appears primarily, if not exclusively, to take issue with the ALJ's evaluation of her credibility, as the evidence upon which she relies to support her arguments is entirely her own subjective testimony about her conditions, with no reference to the medical evidence of record.  Specifically, she argues that the ALJ failed to account for her stated inability to be around other people (evidenced by the fact that she allegedly only leaves the house twice a week to attend church), her inability to concentrate, her inability to sleep and her continued thoughts of self-harm.  She further takes issue with the ALJ ignoring her testimony that the medications taken to control her condition do not always work, and as a result of this and her depression, she is unable to work a full-time job. In conclusion, she argues, "Clearly, if a mother had her only two sons killed – at separate times, it is expected that the depression surrounding that would be debilitating.  A finding otherwise is just irrational."  [10 at 10].  While the Court certainly sympathizes with Barber-Woodley, in evaluating the ALJ's decision, it must follow the regulations and binding legal precedent.  Doing so results in a finding that the ALJ's decision is supported by substantial evidence.

The Sixth Circuit has held that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate evaluation as to her credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Thus an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). When a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians

. . . and any other relevant evidence in the case record." to determine if the claimant's claims regarding the level of her pain are credible.  *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4 at *3, 1996 WL 374186 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

Contrary to Barber-Woodley's argument, the ALJ did in fact consider her testimony, and determined that she was not fully credible in her subjective reports of her condition for a variety of reasons.[4]  The ALJ recounted Barber-Woodley's testimony and her subjective reports regarding her activities of daily living and her symptoms.  (Tr. 21-23).  He noted that Barber-Woodley reported feeling depressed, having anxiety attacks that come and go, and that she had difficulty sleeping.  *Id.*  He noted that she reported not going out of the house without her husband and that she did not like being around people.[5]  *Id.*

The ALJ then discussed the medical evidence of record, including the opinion evidence of the consulting examiner.  *Id.*  The ALJ noted that treatment records from psychiatrist Dr.

---

[4] Barber-Woodley asserts that she had continuous thoughts of self-harm.  However, she testified at the hearing that she would not contemplate suicide based on her religious beliefs.  (Tr. 34).  Further, none of the mental health notes of record document either suicidal ideation or a risk of self-harm.  (Tr. 205; 207; 211-16; 220; 223; 253; 255-62; 283).

[5] The ALJ stated that Barber-Woodley never testified that her medication was ineffective when taken as directed.  (Tr. 21).  It is unclear whether the ALJ accounted for Barber-Woodley's testimony that even with her medication she sometimes has trouble getting through the nights because she is thinking about her sons, (Tr. 31), or whether the ALJ acknowledge this testimony but found that it did not mean that her prescribed medication was ineffective generally.  Moreover, as noted above, *supra* fn. 3, Barber-Woodley reported to Dr. Goergen that her "medications greatly assist her ability to sleep."  (Tr. 270).  Regardless, Barber-Woodley does not specifically take issue with this point (other than to simply recite her own testimony) and the remainder of the ALJ's reasons for discounting Barber-Woodley's credibility are valid and supported by substantial evidence of record.  Thus any error in this regard is harmless.  *See Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it) (*citing Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

Sachin Nagarkar in June 2010 disclosed a Global Assessment of Functioning score of 65,[6] which

corresponds to mild symptoms.  (Tr. 21; 207).  He further noted that Barber-Woodley's other

treatment records reflected little more than simple diagnosis of her condition and treatment with

medication and therapy.  (Tr. 21-22; 205; 207; 211-16; 220; 223; 253; 255-62; 283).  Specifically

the ALJ noted that, although Barber-Woodley treated with primary care physician Dr. Michael

Young, as well as several mental health providers, none of her treating providers placed

limitations on her activities of daily living with regard to her mental condition.  *Id*; s*ee Walters*,

127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among the medical reports, claimant's testimony, and other evidence.") (citing

*Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).

Regarding her activities of daily living, the ALJ noted that Barber-Woodley was

inconsistent as to what her activities were – at some points stating she never went out, then later

admitting she attends church twice weekly and telling an examiner she also shops with her

husband.  (Tr. 21-22; 32; 35; 183; 271).  Despite her reports and testimony that she did not like

other people, she admitted to getting along well with family, and having many friends at church.

(Tr. 21-22; 270-71).  The ALJ noted that Barber-Woodley is able to drive, attend medical

appointments, and was noted to get along well with the ALJ and answer questions appropriately.

(Tr. 21-22).  She was also noted to be capable of doing housework, preparing meals and

engaging in self-care.  (Tr. 21-22; 271).  He found these abilities to be consistent "with an active

---

[6] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health.  The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below.  Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).

lifestyle for an unemployed person" and thus inconsistent with someone who was completely disabled.  (Tr. 22).

As for opinion evidence, the ALJ discussed the consultative examination of Dr. Marianne Goergen in April 2011.  (Tr. 21-22).  He found Dr. Goergen's opinion to be internally inconsistent, as it diagnosed Barber-Woodley with major depressive disorder, single episode, moderate, but then issued her a GAF score of 40-45, which would be more consistent with severe symptoms.  (Tr. 22; 272-73).  He further noted that Dr. Goergen's ultimate conclusion was also inconsistent with her observations.  (Tr. 22; 270-73).  For example, Dr. Goergen concluded that Barber-Woodley would likely demonstrate irritability working with co-workers and supervisors and that her depression symptoms might cause her to have difficulty concentrating in a work setting.  (Tr. 22; 272).  However, the ALJ pointed out that Barber-Woodley had stated to her that she got along with her sister and son and had many friends at church.  (Tr. 22; 270-71).  She had also reported activities of daily living that were inconsistent with severe symptoms, including reading the Bible, preparing meals, going to church regularly, paying bills, and shopping with her husband.  *Id.*  And finally, the ALJ pointed out that Dr. Goergen herself had noted the possibility that Barber-Woodley was exaggerating her symptoms, but did not appear to take that into account in her ultimate conclusion.  (Tr. 22; 271-73).  Finally, the ALJ appropriately found that Dr. Goergen's conclusions, that Barber-Woodley would be irritable with co-workers and supervisors, that she would need simple tasks to start, "gradually increasing in complexity," and that she would have difficulty concentrating, "would not preclude the performance of all unskilled work on a sustained full-time basis."  (Tr. 21-22; 272).[7]  Barber-Woodley does not take

---

[7] Indeed, the ALJ accounted for these limitations by limiting Barber-Woodley to "no contact with the public, limited contact with co-workers, simple and repetitive tasks, not capable of work requiring constant, [c]lose attention to detail or at more than a regular pace, and requiring

issue with the ALJ's evaluation of this evidence and the Court finds the ALJ's weighing of this evidence to be supported by good reasons and substantial evidence of record.

Overall, the Court finds that the ALJ's reasons for finding Barber-Woodley's subjective reports less than fully credible are valid and supported by substantial evidence of record.  Barber-Woodley has offered this Court no compelling reason to overturn the ALJ's credibility determination and the Court finds none.  *Smith*, 307 F.3d at 379 (credibility determination will not be disturbed absent "compelling reason").

### 2.      *Adequacy of Hypothetical Question*

Barber-Woodley parlays her credibility argument into one about the adequacy of the ALJ's hypothetical question to the VE.  The Court notes that the hypothetical question posed to the VE included the exact same limitations the ALJ ultimately adopted in his written RFC.  (Tr. 20; 38).  Further, as discussed above, the ALJ had good reasons for rejecting Barber-Woodley's subjective allegations of limitation, and crafting an RFC and hypothetical based more on the objective medical record and Barber-Woodley's activities of daily living.

Barber-Woodley's specific arguments on these matters lack merit.  First, Barber-Woodley argues that "Finding that [she] is capable of performing the positions of dishwasher, janitor, and packer while she would be subjected to public interaction, is not something she is capable of doing."  [10 at 10 (citing Tr. 24)].  The Court rejects this argument because it ignores that the hypothetical question posed to the VE, and the ultimate RFC imposed by the ALJ, required "no contact with the public, [and only] limited contact with co-workers…"  (Tr. 20, 38).  As noted above, these limitations are consistent with the ALJ's valid credibility determination, in particular his findings about her ability to maintain some personal relationships on a consistent,

occasional supervision."  (Tr. 20).

on-going basis.

Barber-Woodley also argues that the ALJ's limitation of her to simple, routine tasks that do not require much concentration is "cruel" because such jobs are "thoughtless [ ], which, in turn, allows her to constantly think about her depression, which will lead to more severe depression." [10 at 10]. Barber-Woodley argues that she could not sustain such a mindless job "when she would have the entire day to dwell on the fact that her two sons were killed." *Id.* But as noted above, other than her own testimony, Barber-Woodley fails to provide any support for her argument that she could not perform work within the confines of the RFC. Nor does she provide any support for her conclusion that performing that work would exacerbate her depression. Again, following the proper analysis of the ALJ's decision, the Court should reject Barber-Woodley's argument.

An ALJ is entitled to rely upon the testimony of a VE in response to hypothetical questions to the extent those questions accurately portray the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). At the same time, an ALJ is only required to pose those hypothetical limitations that he finds credible. *Burbo v. Comm'r of Soc. Sec.*, No. 10-2016, 2011 U.S. App. LEXIS 26143 (6th Cir. Sept. 21, 2011) *citing Stanly v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994). Here, the ALJ's hypothetical is based on his RFC, and his RFC is specifically based on the uncontroverted opinion evidence of record finding that Barber-Woodley could engage in simple work. (Tr. 20; 38-39; 272). Because the ALJ's hypothetical question accurately portrays the limitations he found credible, and because his credibility determination has already been found to be supported by substantial evidence of record, his hypothetical question is accurate and he was entitled to rely on the VE testimony that it generated. Therefore, the ALJ's conclusion

that Barber-Woodley is not disabled should be affirmed.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Barber-Woodley's Motion for Summary Judgment **[10]** be **DENIED**, the Commissioner's Motion **[14]** be **GRANTED** and this case be **AFFIRMED**.

Dated: November 12, 2014              s/David R. Grand
Ann Arbor, Michigan                  DAVID R. GRAND
                                  United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).   The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).   Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 12, 2014.

                                  s/Eddrey O. Butts
                                  EDDREY O. BUTTS

Case Manager